# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARIA EVA ZAMORA OROZCO,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

_______________________________________/

Case No. 1:26-cv-01907-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Maria Eva Zamora Orozco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. FACTUAL BACKGROUND

On June 29, 2023, Plaintiff filed a claim for DIB payments, alleging she became disabled on June 26, 2023, due to mental decline, memory loss, anxiety, high blood pressure, suicidal ideation, fatigue, seizures, and arthritis. (Administrative Record ("AR") 21, 57, 66, 318.)

Plaintiff was born in 1972 and was 52 years old on the alleged disability onset date. (AR 32,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 7.)

57, 66.) She has a marginal education and previously worked as a plant processor in a nursery. (AR 32, 319, 327)

**A. Relevant Evidence of Record[2]**

**1. Medical Evidence**

In July 2023, Plaintiff presented for a follow up appointment to address her memory loss and epilepsy. (AR 474–76.) It was noted that Plaintiff had two seizures in June and has "been feeling really tired" since. (AR 474.) Her medication, which she was tolerating "well," was increased. (AR 474.) She denied musculoskeletal pain or decreased range of motion, vision problems, anxiety and depression. (AR 474.) On physical examination, Plaintiff was alert, oriented, cooperative, and in no acute distress, with normal mood, affect, heart rate, heart rhythm, strength, sensation, and gait. (AR 470.)

At a follow up appointment in September 2023, Plaintiff complained of fatigue. (AR 469.) It was noted that her last seizure was "two nights before." (AR 469.) Her medication was decreased for a "better side effect profile long term." (AR 469.) She denied musculoskeletal pain or decreased range of motion, vision problems, anxiety and depression. (AR 469.) Plaintiff's physical examination was normal as before. (AR 470.)

In November 2023, Plaintiff presented for an epilepsy consultation. (AR 464–66.) Her five-year history of seizure disorder was noted, which were "convulsive, followed by postictal states." (AR 464.) Plaintiff's examination was normal as before. (AR 464.) Her epilepsy was noted to be "controlled," and that medication would be continued "in case of breakthrough seizures." (AR 464.) Plaintiff attended a three-month follow-up appointment in December 2023. (AR 497–99.) She complained of hyperlipidemia. (AR 498.) On physical examination, she was alert and oriented, cooperative, with a regular mood and in no acute distress. (AR 498.) She denied headaches. (AR 498.)

Plaintiff presented for a comprehensive psychological assessment by Rajendra Kewallal, PsyD, in January 2024. (AR 477–82.) She complained of epilepsy and mental health symptoms of

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

chronic anxiety and depression. (AR 477.) Plaintiff denied having limitations with daily self-care or shopping. (AR 478.) She reported she was independent for basic activities of daily living and does not need help with preparing meals or doing light household chores. (AR 478.) She presented with good grooming, a calm manner, good eye contact, and normal facial expression. (AR 478.) She was alert and oriented, followed directions, and interacted cooperatively with the examiner. (AR 478.) According to Plaintiff, her "typical day involves going for walks, then I'll come home and make some tea then I socialize with people at my church, we sometimes pray together." (AR 478.) On mental status examination, Plaintiff's speech was normal, mood was calm and friendly, and affect was full in range, with adequate attention, concentration, fund of knowledge, memory, ability for abstraction, insight, and judgment. (AR 479.) She denied suicidal and homicidal ideation, as well as hallucinations and delusions. (AR 479.) Plaintiff's thought process was found to be linear and her thought content normal. (AR 479.) She was also given the Comprehensive Test of Nonverbal Intelligence (CTONI). (AR 479–80.) Her scores were "between the poor and average ranges." (AR 480.)

In March 2024, Plaintiff attended an appointment for medication refills. (AR 489–91.) Plaintiff's physical examination was normal, showing that she was alert and oriented and in no acute distress. (AR 490.) Plaintiff requested a referral to a specialized medical center for epilepsy in June 2024. (AR 936.) She reported having a seizure four days prior. (AR 936.) She also complained of numbness in her bilateral lower extremities. (AR 936.) Her physical examination was normal, as before. (AR 936.)

Plaintiff sought treatment for anxiety in August 2024. (AR 511–20.) She reported muscle tension, feeling on edge, poor motivation, anhedonia, low mood, and crying episodes. (AR 511.) She denied suicidal ideations. (AR 511, 515, 522.) Her mental status examination showed a sad and anxious mood, impaired memory (unable to remember three words after a five-minute delay), intact cognition, and normal insight and judgment. (AR 514–15.) She was distractable, with disorganized thoughts. (AR 514–15.)

In September 2024, Plaintiff complained of persistent numbness and tingling in her legs. (AR 679–80.) Her epilepsy was "doing fine without any breakthrough seizures" on medication.

(AR 679.) Her physical examination was normal, and she denied anxiety and depression. (AR 679–80.) Plaintiff attended a follow up appointment for epilepsy, diabetes, hyperlipemia, peripheral neuropathy, and migraines in January 2025. (AR 525–26.) Her epilepsy was indicated to be "stable without having any breakthrough seizures" on medication. (AR 525.) She was prescribed migraine medication "for abortive therapy" and to "help with the reducing the frequency and intensity" of the migraines. (AR 525.) Plaintiff denied musculoskeletal pain, decreased range of motion, vision problems, anxiety, and depression. (AR 525.) On examination, Plaintiff was noted to be alert and in no acute distress, with normal mood, affect, neurological function, strength, sensation, cerebellar function, and cranial nerve function. (AR 526.)

**2. Opinion Evidence**

Following their examination, Dr. Kewallal, joined by Kellie Sulier, PsyD, opined in January 2024 that Plaintiff has no significant limitations in any area of mental function. (AR 480–82.) In February 2024, State agency psychological consultant N. Haroun, M.D., opined that Plaintiff had no severe mental impairments. (AR 59–60.) Another State agency psychological consultant, Mark Gilson, Ph.D., also found in May 2024 that Plaintiff's mental impairments were not severe. (AR 68–69.)

**3. Plaintiff's Statements**

In December 2023, Plaintiff completed a function report (AR 360–67) and a seizure questionnaire (AR 335–37). She reported having a long history of seizures, sometimes occurring a month or so apart, but she can go a year or more without one. (AR 335.) She reported no symptoms prior to a seizure, but an event consists of shaking, numbness, loss of bodily control, and she sometimes bites her tongue. (AR 335.) According to Plaintiff, she can feel tired or have clouded thoughts for three days afterward. (AR 335.)

Plaintiff reported her impairments cause difficulty lifting, bending, standing, reaching, sitting, kneeling, talking, climbing stairs, seeing, remembering, completing tasks, concentrating, understanding, and following instructions. (AR 365.) She stated that she is easily distracted and has trouble sleeping. (AR 361, 365.) Plaintiff stated that she has some difficulty with her personal care following a seizure. (AR 361.) She can prepare meals but needs assistance and supervision, as she

sometimes leaves the stove on. (AR 362.) Plaintiff reported that she performs some household chores such as dishes and laundry with supervision. (AR 362.) According to Plaintiff, she has trouble handling stress but likes to change her routine. (AR 366.)

Plaintiff reported activities such as shopping in stores, attending church weekly, and spending time with friends or relatives up to three times per week. (AR 363, 364.) She can go out alone locally. (AR 363.) She walks, rides in a car, and occasionally drives to get around. (AR 363.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on February 6, 2024, and again upon reconsideration on May 31, 2024. (AR 21, 65–80, 82–86.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 87–138.) At the hearing on April 17, 2025, Plaintiff appeared by telephone with counsel and a Spanish interpreter and testified before an ALJ as to her work history and alleged disabling conditions. (AR 43–51, 56.) A Vocational Expert (VE) also testified at the hearing. (AR 51–55.)

**1. Plaintiff's Testimony**

Plaintiff testified that she experiences "strong" headaches about three times per week, which cause light sensitivity. (AR 44–45, 48–49.) She stated that ibuprofen "calms" them and they require "two to three days of recovery" during which she feels fatigued. (AR 44, 49.) Regarding seizures, she testified that she had only a "mild" one last year, causing weakness and requiring her to sit down "for a while and let it wear off," after which she is able to get back on her feet. (AR 45.) She testified that "everything that's going on with me right now is due to the epilepsy. I've fallen many times, so I hit my head. The pain and all that is due to that." (AR 56.)

Plaintiff stated that she gets "lots of sadness" and would "get lost" while working at the nursery. (AR 45–46.) Her medication helps her anxiety and depression, but it makes her tired. (AR 46.) According to Plaintiff, her treatment providers have advised her to write down her appointments because she's missed "a lot" of them. (AR 47.)

She testified that she sometimes would go with her husband to swap meets and grocery shopping. (AR 46–47.) When asked whether she has "any problems interacting with others" or "[w]hen you go to the store, any issues with people you don't know, strangers," Plaintiff responded

"No, I have no problems." (AR 47.)

**2. Vocational Expert's Testimony**

According to the VE, Plaintiff had past work as a plant processor, Dictionary of Operational Titles (DOT) code 405.687 014, generally at the heavy exertional level but performed at medium, with a specific vocational preparation (SVP)[3] of 2. (AR 51.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and vocational background. (AR 51.) The VE was also to assume this person had no exertional limitations, but she has the following limitations: she cannot climb ladders, ropes, scaffolds; she can occasionally climb ramps or stairs; she cannot balance as defined by the Selected Characteristics of Occupations; she can work with occasional exposure to excessive loud noise and excessive vibration, occasional concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas; she cannot work in proximity to moving mechanical parts, in high exposed places; and she cannot perform any occupational driving. (AR 51–52.) The VE testified that such a person could perform Plaintiff's past work, as well as other medium exertional jobs in the national economy such as warehouse worker, Dictionary of Operational Titles (DOT) code 922.687-058, with a SVP of 2; hospital cleaner, DOT code 323.687-010, with an SVP of 2; and dining room attendant, DOT code 311.677-018, with an SVP of 2.

Considering a second hypothetical, where a person would have the same limitations as the first and is limited to work involving understanding, remembering, and carrying out simple instructions, and work with occasional changes in a routine setting, the VE testified that the past work and the previously identified work would both be available. (AR 52–53.) According to the VE, considering a third hypothetical involving the same limitations in the second hypothetical but also could only stand and walk for one hour total in an eight-hour day, no work would be available. (AR 53.)

The VE considered a fourth hypothetical, with the same limitations as the third, but also a

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

requirement of at least an additional break of one hour every day. (AR 53.) The VE testified that there would be no work such a person could perform. (AR 53.) In a fifth and final hypothetical, the VE testified adding a requirement to the first hypothetical of absenteeism two days per month would preclude all work. (AR 54.)

**C. The ALJ's Decision**

In a decision dated April 29, 2025, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 21–34.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 23–34.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2025, and she had not engaged in substantial gainful activity since June 26, 2023, the alleged onset date (step one). (AR 23.) At step two, the ALJ found Plaintiff's following impairments to be severe: a seizure disorder, migraine headaches, generalized anxiety disorder, and recurrent major depression. (AR 23–25.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 25–27.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels, but with the following non-exertional limitations: [Plaintiff] can occasionally climb ramps and stairs, but she can never balance as defined by the Selected Characteristics of Occupations. She can never climb ladders, ropes, or scaffolds. [Plaintiff] can have occasional exposure to excessive loud noise and excessive vibration, as well as occasional concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. [Plaintiff] cannot work in proximity to moving mechanical

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

> parts or at high, exposed places. She cannot engage in occupational driving. [Plaintiff] can perform work involving understanding, remembering and carrying out simple instructions. She can work with occasional changes in a routine work setting.

(AR 27–31.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 28–29.)

Based on the RFC assessment, the ALJ determined that Plaintiff could perform her past relevant work as a nursery laborer (step 4). (AR 32.) The ALJ also made the alternative finding that Plaintiff could perform a significant number of other jobs in the national economy (step five). (AR 32–33.) The ALJ concluded Plaintiff was not disabled from June 26, 2023, through the date of the decision. (AR 33–34.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 26, 2026. (AR 1–8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the

following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in the mental function analysis at step three, did not appropriately consider the medical opinion evidence, resulting in an unsupported RFC, and failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective complaints. (Docs. 9, 12.) The Commissioner responds that step three is free from error, the ALJ's consideration of the medical opinion was proper and supported by substantial evidence, and the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 11.) The Court finds no harmful error in the ALJ's decision and will affirm.

**A. The ALJ Did Not Err at Step Three**

**1. Legal Standard**

As set forth above, at step three of the five-step sequence for evaluating disability claims, the ALJ considers whether one or more of the claimant's impairments meets or equals any of the impairments listed in the Listings. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Kennedy v. Colvin*, 738 F.3d 1172, 1174-75 (9th Cir. 2013). A claimant bears the burden of demonstrating that their impairments meet or equal the requirements of a Listing. *Burch,* 400 F.3d at 683. "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in [the Listings], then the claimant is presumed disabled" without further inquiry. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Id*. "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id*. (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).

As pertinent here, Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) have three designated paragraphs ("Paragraphs") A, B and C; a claimant's mental disorder must satisfy the requirements of Paragraph A and either Paragraph B or Paragraph C. *See* 20 C.F.R. Part 404, Subpart P, App'x 1, 12.00 Mental Disorders; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (To prove an impairment is per se disabling under one of these listings, a claimant must show that the impairment satisfies "***all*** of the specified medical criteria[;] An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original). Paragraph A includes certain medical criteria that must be present. *See id*. at 12.00(A)(2)(a). Paragraph B provides the functional criteria an ALJ assesses, which include four areas of mental functioning a person uses in a work setting: 1) understanding, remembering, and applying information; 2) interaction with others; 3) concentration, persistence, and the ability to maintain pace; and 4) the ability to adapt or manage oneself. *See id*. at 12.00(A)(2)(b). To satisfy Paragraph B criteria, a claimant's mental disorder "must result in 'extreme' limitation in one, or 'marked' limitation of two, of the four areas of mental functioning." *Id*.

**2. Analysis**

Plaintiff challenges only the ALJ's Paragraph B analysis at step three. In evaluating the Paragraph B criteria for Listings 12.04 and 12.06 at step three, the ALJ found Plaintiff had moderate limitations in understanding, remembering, and applying information, and concentration, persistence, and the ability to maintain pace. (AR 26–27.) The ALJ further found no limitations in Plaintiff's ability to interact with others, and to adapt or manage herself. (AR 26–27.) Plaintiff criticizes this latter "no limitations" finding, asserting that it improperly relied on "weekly church attendance and the absence of suicidal ideation as proof of workplace function." (Doc. 9 at 6–7.) But the ALJ did not rely on this "proof" alone. In finding no limitation in Plaintiff's ability to interact with others, the ALJ also observed that Plaintiff "did not endorse difficulty getting along with others," and that she shopped in stores and socialized with her friends and relatives, including spending time with members of her friend group "every day." (*See* AR 26 (citing AR 360–67, 478).) The ALJ also noted Plaintiff "generally exhibited normal mood and affect, as well as a cooperative and calm demeanor." (*See* AR 26–27 (citing AR 464, 470, 475, 477–92, 497, 526).)

Likewise, the ALJ's finding that Plaintiff had no limitations in the ability to adapt or manage oneself was not based solely on evidence of a lack of suicidal ideation, but also on her self-reports that she likes to change her routine; examinations showing normal mood and affect and appropriate grooming; and her activity level, including maintaining social contacts and shopping. (*See* AR 27 (citing 360–67, 464, 470, 475, 477–92, 497, 514, 526).) Perhaps most notably, the ALJ pointed to Plaintiff's own repeated denials of anxiety and depression symptoms as demonstrating the absence of any adaptive limitations. (AR 27 (citing 469, 474, 679).)

The Court finds that the ALJ's interpretation of the record rests on substantial evidence. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Plaintiff's argument that such evidence cannot support the ALJ's Paragraph B findings is misplaced, as it relies on legal authority that pertains to either the ALJ's rejection of subjective testimony (Doc. 9 at 7 (citing *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014), *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), and *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)) or the ALJ's evaluation of medical opinions (Doc. 9 at 7–9 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) and 20 C.F.R. §

404.1520c(c)(2)). Neither is at issue here. However, legal authority aside, it appears that Plaintiff's true dispute is whether the ALJ properly weighed the evidence of record (*see* Doc. 9 at 8–9), and it is not this Court's role to reweigh the evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). This Court will therefore not disturb the ALJ's Paragraph B findings for Listings 12.04 and 12.06 and concludes that the ALJ did not err at step three.

**B. The ALJ's Treatment of the Medical Opinions Was Not Erroneous**

**1. Legal Standard**

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source" and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)). The Social Security Administration's regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant... objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

*Woods* makes clear that to reject properly a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (quoting 20 C.F.R. § 404.1520c(b)).

**2. Analysis**

The ALJ determined that the opinions of consultative examiners Drs. Kewallal and Sulier and State agency psychological consultants Drs. Haroun and Gilson, all of whom concluded that Plaintiff had no significant limitations in any area of mental function, were partially persuasive. (AR 31.) The ALJ explained that while these opinions were

> supported by their respective examinations of [Plaintiff] or reviews of the evidence, the whole of the record is consistent with moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace warranting concomitant functional limitations, in light of notations of distractibility and inability to remember any of 3 items after a 5-minute delay considered with the amount of poor and below average scores on the CTONI-2. Thus, with respect to function in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, these opinions/findings are only persuasive to the extent that they suggest residual function. However, the conclusion of no limits in adapting or managing oneself and understanding, remembering, or applying information are consistent with the regularity with which mental status examinations revealed normal mood and affect and cooperative demeanor. Thus, with respect to function in these areas, these findings and opinions are persuasive.

(AR 31 (citing AR 464, 470, 475, 477–92, 497, 514–15, 526) (internal citations omitted).)

Plaintiff asserts that the foregoing persuasiveness discussion is insufficient because the ALJ did not explain how the same examination results could be consistent with the opined lack of social interaction and adaptive limitations, and, at the same time, inconsistent with the opined lack of limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (Doc. 9 at 10–11.) The Court disagrees and finds that the ALJ properly evaluated persuasiveness of the medical opinions in determining that the opinions were supported, yet partially inconsistent with the medical evidence. *Woods*, 32 F.4th at 791–92. The ALJ's explanation describes the contents of the mental status examinations cited and illustrates that they evidence a longitudinal record that simultaneously can, and does, establish both normal (*i.e.*, mood, affect, and demeanor) and abnormal findings (*i.e.*, distractibility, immediate memory delays, poor and below average scores on the CTONI-2) in the different areas of mental functioning. (AR 31 (citing AR 464, 470, 475, 477–92, 497, 514–15, 526).) The ALJ interpreted these examination results, as they are charged to do, and ultimately concluded that the evidence is both consistent with a lack of social interaction and adaptive limitations, yet inconsistent with a lack of limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (ALJs are capable of independently reviewing and forming conclusions about medical evidence to determine whether a claimant is disabled and cannot work, as required by statute); *Rounds v. Comm'r of Soc. Sec. Admin.*,

807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct [residual functional capacity].") *See also Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)); 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner); *id.* § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

Contrary to Plaintiff's assertion (Doc. 9 at 11–12), the ALJ was entitled to review and interpret these mental status examinations—none of which entailed raw medical data that would necessitate medical expertise. *See Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted); *Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."); *cf. Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside record to consult medical textbooks for purpose of making their own assessment of the claimant's physical condition). The Court finds that these conclusions regarding the persuasiveness of the medical opinions are not discrepant but instead are supported by the substantial evidence cited.

There is therefore no error in the ALJ's treatment of the medical opinion evidence or the formulation of Plaintiff's RFC.[5] *See Mills*, 2014 WL 4195012, at *4 (finding argument that the ALJ erred in formulating an RFC lacked merit where the ALJ "carefully analyzed the various medical

---

[5] In addition to the opinion evidence, the ALJ's RFC assessment is also based on consideration of Plaintiff's subjective complaints. (*See* AR 28–30.) The Court upholds the sufficiency of the evidence supporting the ALJ's adverse credibility finding and the adequacy of the ALJ's reasons given to explain this finding, as set forth below. (*See* Section IV.C., *infra*.)

opinions, treatment records, and plaintiff's own testimony in formulating an RFC."); *see also Rounds*, 807 F.3d at 1006 (ALJ's RFC determination need not mirror any particular provider's opinion). Plaintiff does not specify what additional functional mental limitations resulting from her impairments were not accounted for in the ALJ's RFC assessment—indeed, the ALJ reasonably accommodated Plaintiff's moderate impairments in "understanding, remembering, or applying information and concentrating, persisting, or maintaining pace" by limiting her to "understanding, remembering and carrying out simple instructions with occasional changes in a routine work setting" (AR 30).[6] *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated medical opinion evidence that plaintiff had "moderate" limitation in pace and "other mental limitations regarding attention, concentration, and adaptation"). The ALJ also included in the RFC greater physical limitations than those opined because of Plaintiff's seizures and headaches.[7] (AR 29.)

The mere fact that the longitudinal medical record could be interpreted differently is of no consequence, as the Court will not second-guess the ALJ's reasonable interpretation, even if the record could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110; *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted). *See also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir.

---

[6] Plaintiff relies on the unpublished opinion *Brink v. Comm'r, Soc. Sec. Admin.*, 343 F. App'x 211 (9th Cir. 2009), to argue that the ALJ did not adequately incorporate the mental limitations they found into the RFC, distinguishing *Stubbs-Danielson*. (Doc. 9 at 12; Doc. 12 at 5.) Setting aside the issue of how much weight to accord *Brink*, it involved an RFC that included fewer concrete restrictions based on noted mental limitations. *See Brink,* 343 F. App'x at 212 (holding that limiting a claimant to "simple, repetitive work" did not account for a claimant's moderate limitations in concentration, persistence, or pace). Here, unlike *Brink*, the ALJ moved beyond limiting Plaintiff to "simple, repetitive tasks," and included that claimant "can perform work involving understanding, remembering and carrying out simple instructions." (AR 28.) In so doing, the RFC includes concrete restrictions that account for Plaintiff's moderate limitations in concentration, persistence, and pace.

[7] As such, any error in this regard would therefore be inconsequential to the disability determination. *See Lamas v. Saul*, No. 1:19-cv-00852-BAM, 2020 WL 6561306, at *9 (E.D. Cal. Nov. 9, 2020) (holding that although ALJ erred in evaluating a claimant's RFC without support from a medical opinion, such error was harmless where the ALJ found more stringent limitations than any medical opinion). *See also Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("[T]his overinclusion of debilitating factors is harmless simply because if a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration."). Plaintiff herself characterizes the RFC as "too restrictive on the seizures and migraines." (Doc. 9 at 13.)

2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the record that is supported by substantial evidence. *See Ford*, 950 F.3d at 1159; *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**C. The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1. Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 28–29.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the ALJ identified at least two valid reasons for discrediting Plaintiff's testimony.

a. <u>Objective medical evidence</u>

First, the ALJ found that "minimal complaints" related to her alleged headache and seizure symptoms and the "regularity of normal examination findings" demonstrate that Plaintiff's "migraines, seizures, and any related effects are not as intense, persistent, frequent, or limiting as she alleges and she retains function for work within the above limitations." (AR 29.) An ALJ may consider whether a claimant's subjective symptoms are supported by objective medical evidence, and that an ALJ may reject a claimant's subjective testimony if it is inconsistent with the objective medical evidence. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (collecting cases). Additionally, while "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680–81; *see Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, the ALJ found that Plaintiff's seizures were "stable without breakthrough events on her antiepileptic therapy," there was "not support" for allegations that she had fallen "many times due to seizures," there were "minimal complaints of headaches" after starting medication, and that "examinations throughout the record established normal findings." (AR 29

(citing 360–67, 464, 470, 475, 478–79, 497, 514, 526).)

These findings are supported by substantial evidence in the record. Plaintiff's last documented seizure occurred in June 2024. (AR 936.) Four days following that seizure, Plaintiff's physical examination was normal, showing that she was alert and oriented and in no acute distress. (AR 936.) Physical examinations in July 2023 (AR 475), September 2023 (AR 470), November 2023 (AR 464), December 2023 (AR 498), March 2024 (AR 490), June 2024 (AR 936), September 2024 (AR 679–80), and January 2025 (AR 526), similarly showed Plaintiff was alert, oriented, cooperative, and in no acute distress, with normal mood, affect, neurological function, strength, sensation, cerebellar function, cranial nerve function, heart rate, heart rhythm, and gait. In January 2025, Plaintiff's epilepsy was indicated to be "stable without having any breakthrough seizures" on medication. (AR 525.) Regarding her allegation of headache impairments, Plaintiff was prescribed migraine medication in June 2024, (AR 533), but did not complain about migraines again until an appointment in January 2025 (AR 525). She expressly denied headaches in December 2023. (AR 498.)

Plaintiff first contends that the ALJ "ignored the cyclical nature" of seizures and migraines, citing *Garrison*, 759 F.3d at 1017. (Doc. 9 at 15; Doc. 12 at 6.) In *Garrison*, the ALJ "discredited Garrison's [subjective] testimony mainly on the ground that the record showed that Garrison's condition had improved due to medication at a few points," and that "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id*. at 1016-17. That is not what happened in this case. Here, the ALJ reviewed all the evidence and considered, *inter alia*, Plaintiff's treatment record, her daily activities (discussed below, *see* Section IV.C.2.b., *infra*), her self-reports to examiners, and her testimony at the hearing. (*See* AR 29–30.) Unlike in *Garrison*, there is no evidence that Plaintiff remained in a constant state of impairment "even while going to great lengths to minimize stressors in her life—to the point that she could not go to the grocery store alone." *See Garrison*, 759 F.3d at 1018. This is not a case where "[t]he ALJ erred in concluding that a few short-lived periods of temporary improvement in [Plaintiff's seizure and migraine] symptoms undermined [her] testimony." *Id*. *Garrison* is inapposite.

Plaintiff next faults the ALJ for not identifying evidence "affirmatively contradicting" her testimony that she has "fallen many times [and] hit [her] head." (Doc. 9 at 15–16; Doc. 12 at 5–6.) But the ALJ need not only show a direct contradiction to discredit subjective testimony. The ALJ can consider a lack of medical evidence as well, so long as it is not the only reason for discounting the testimony. *See Burch*, 400 F.3d at 680–681. Here, in addition to a lack of support, the ALJ also noted evidence that was inconsistent with Plaintiff's testimony of falls causing head injury, such as few complaints of headaches and normal examination findings. (AR 29.)

As to this evidence, the Court rejects Plaintiff's next argument that the ALJ did not adequately link it to her complaints of headache-related impairments. (Doc. 9 at 16; Doc. 12 at 5–6) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). In its decision, the ALJ identified Plaintiff's testimony regarding her feelings of fatigue and "clouded thoughts" for three days following an episode, (AR 28), and supported the finding that "minimal complaints" and the "regularity of normal examination findings" undermined it (AR 29). *See* Titles II & XVI: Evaluating Cases Involving Primary Headache Disorder, Social Security Ruling ("SSR") 19-4p (S.S.A. August 26, 2019) (In cases where migraine and migraine symptoms are alleged, "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC."). Contrary to Plaintiff's assertion, the ALJ here did not simply rely on broad boilerplate language discrediting any testimony inconsistent with the ALJ's RFC assessment. While the ALJ did not perform a line-by-line exegesis of Plaintiff's testimony, *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020), they discussed how her headache symptoms and limitations alleged by Plaintiff were not supported by the record. *See Guthrie v. Kijakazi,* No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) *(*the ALJ sufficiently explained her reasons for discounting the plaintiff's symptom testimony, and "we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufmann*, 32 F. 4th at 851); *Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding no error where the ALJ summarized the plaintiff's "relevant testimony concerning her key asserted limitations," "stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record,'" and then "explained the specific reasons upon which that conclusion was based."); *Young v. Saul*, 845 F. App'x 518,

519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."). *See also Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); *Razaqi v. Kijakazi*, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing."); *cf. Brown-Hunter*, 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).

The remainder of Plaintiff's arguments challenge the conclusions drawn by the ALJ from interpretation of the evidence (*see* Doc. 9 at 14; Doc. 12 at 5), which this Court will let stand, given its reasonableness. *See Molina*, 674 F.3d at 1110; *Andrews*, 53 F.3d at 1039–40.

b. <u>Activities of daily living</u>

The ALJ did not predicate their credibility determination on the objective medical evidence alone, however. The ALJ also decided based on specific, clear, and convincing evidence that Plaintiff's allegations of disability due to "mental decline, memory loss, fatigue, anxiety, suicidal ideations, headaches, and seizures" were inconsistent with her admitted activities of daily living. (AR 28, 29, 30.) A claimant's level of activity may support an ALJ's determination to give less weight to their subjective statements. When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). In addition, the Ninth Circuit determined that a claimant's activities may be used to support an adverse credibility determination where the capabilities contradict the severity of the symptoms reported. *See, e.g., Valentine*, 574 F.3d at 693; *Stubbs-Danielson*, 539 F.3d at 1175. Thus, the Ninth Circuit determined a claimant's level of activity can form the basis for an ALJ to discount subjective statements where: (1) the

activities contradict a claimant's testimony, or (2) the level of activity "meet[s] the threshold for transferable work skills." *Orn*, 495 F.3d at 639.

Here, as identified by the ALJ, Plaintiff reported during the relevant period that she went on daily walks, attended church weekly, shopped in stores, and spent time with friends or relatives up to three times per week. (AR 30 (citing AR 363, 364, 478.) The ALJ reasonably concluded that these activities undermined Plaintiff's allegations of debilitating physical and mental impairments (AR 29, 30). *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851–52 (9th Cir. 2022) ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Ahearn*, 988 F.3d at 1117 (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas*, 278 F.3d at 959 (affirming ALJ's decision discounting the claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

Although Plaintiff challenges the ALJ's reliance on her daily activities in the Paragraph B analysis (*see* Doc. 9 at 7), she does not address it with respect to her subjective symptom testimony. Even if Plaintiff had made the same argument here, however, it would fail. Plaintiff does not dispute she performed the activities identified by the ALJ but asserts instead that "[l]imited activities do not preclude disability where they are not transferable to a work setting." (Doc. 9 at 7 (citing *Orn*, 495 F.3d at 639).) But the Ninth Circuit has indicated that there are "***two*** grounds for using daily activities to form the basis of an adverse credibility determination." *Orn*, 495 F.3d at 639 (emphasis added). "When an ALJ finds the claimant's level of activities contradicts their testimony, the ALJ is not required also to find that the level of activity is transferable to work." *Valdez v. Bisignano*, No. 1:24-CV-0026 JLT EPG, 2025 WL 2330229, at *6 (E.D. Cal. Aug. 13, 2025). "Rather, these are separate considerations." *Id.* (citing *Orn,* 495 F3d at 639); *see also Stubbs-Danielson*, 539 F.3d at 1175 ("where . . . activities suggest some difficulty functioning, they may be grounds for

discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment); *Valentine*, 574 F.3d at 693 (finding the ALJ identified "a clear and convincing reason to reject [the claimant's] subjective testimony" where the level of activity "contradicted [his] contentions about how debilitating his fatigue was"). Contrary to Plaintiff's assertion, having found her activities contradicted her allegations, the ALJ was not required also to find that her activities equated with the performance of full-time work. *See Valdez*, 2025 WL 2330229, at *6 ("As the magistrate judge found, 'the ALJ made a reasonable determination that Plaintiff's daily activities, as reported in her physical therapy and other post-surgical treatment records, were inconsistent with her hearing testimony.' Plaintiff's objection that the ALJ was also required to find her activities rose to the level of transferable to work is unsupported by established law.") (internal citations omitted).

In sum, the Court finds that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of her alleged impairments.

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **August 18, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE